IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BP Care, Inc. | Case No. C-1-01-526 |
| Plaintiff | |
| | District Judge Susan J. Dlott |
| v. | |
| | ORDER DENYING |
| Tommy Thompson, Secretary of | PLAINTIFF'S MOTION TO |
| Health and Human Services, *et al.* | STRIKE AND GRANTING |
| | DEFENDANTS' MOTION TO |
| Defendants | DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss Complaint and Cross-Claim, (Doc. #15) and Plaintiff's Motion to Strike Defendant's Motion to Dismiss (Doc. #18). Defendants Tommy Thompson and the Department of Health and Human Services ("HHS"), collectively referred to as the Centers for Medicare and Medicaid Services ("CMS")[1] move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss this action on the ground that the Court lacks subject matter jurisdiction. Defendants alternatively move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the action on the ground that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff moves to strike Defendants' Motion to Dismiss on the grounds of violations of Local Rules and conversion of a Motion to Dismiss into a Motion for Summary

---

[1] The Department of Health and Human Services has delegated the administration of the Medicare Program to a subpart of the Department known as the Centers for Medicare and Medicaid Services.

Judgment. For the reasons set forth below, the Court denies Plaintiff's Motion to Strike and **GRANTS** the Defendants' Motion to Dismiss.

**I.    FACTUAL BACKGROUND**

Plaintiff BP Care, Inc. ("BP Care") operates a skilled nursing facility formerly operated by West Chester Management Company, Inc., doing business as Barbara Parke Care Center ("Barbara Parke"). (Doc #1 ¶¶ 2, 5.) BP Care and Barbara Parke are two separately incorporated entities. This action arises out of CMS' attempt to impose successor liability on BP Care for the civil money penalty imposed on the nursing home while operated under Barbara Parke.

The Medicare program is a federally funded and administered health insurance program for elderly and disabled individuals. See 42 U.S.C. § 1395 et seq. ("Medicare Act"). Part A of the Medicare Act provides inpatient hospital insurance, including coverage of post-hospital nursing home stays. To be reimbursed for its services, a nursing home must enter into a provider agreement with the Secretary of HHS, and it must comply with various statutory requirements. See 42 U.S.C. § 1395cc(a). In order to enter a provider agreement, a nursing facility must undergo a comprehensive survey to ensure that it meets the health and safety requirements specified in the Medicare Act and CMS regulations. See 42 U.S.C. § 1395i-3(a)(3), (b)-(d). State and federal entities conduct surveys periodically thereafter to investigate continued compliance. See 42 U.S.C. § 1395i3(a)(g). If, pursuant to these surveys, the Secretary determines that the nursing home is not in compliance with health and safety requirements, he may impose a variety of remedies, including civil money penalties. See 42 U.S.C. § 1395i-3(h)(2)(B)(ii).

CMS imposed a civil money penalty on Barbara Parke after the Ohio Department of Health conducted a standard survey of the nursing home in February of 1999, prior to the nursing home's

sale to BP Care, and determined that the facility was not in substantial compliance with health and safety requirements. (Doc. #20 exh. 1.) If, as here, CMS decides to impose a civil money penalty on a nursing facility, it must send a written notice of the penalty to the facility stating, inter alia, the nature of the noncompliance, the statutory basis for the penalty, and "[i]nstructions for responding to the notice, including a statement of the facility's right to a hearing, and the implication of waiving a hearing . . ." 42 C.F.R. § 488.434(a)(1), (2)(i), (ii), and (viii). A nursing facility may appeal the finding of noncompliance to the Civil Remedies Division of the Departmental Appeals Board of CMS ("DAB"). See 42 C.F.R. § 488.408(g)(1). The nursing home has the right to request an evidentiary hearing before an administrative law judge ("ALJ"). See 42 C.F.R. § 498.40. CMS sent such notice to Barbara Parke, and in May of 1999 Barbara Parke appealed the survey's findings and imposition of the civil money penalty by requesting a hearing before an ALJ. (Doc. #20, exh. 1.)

Around August of 1999, BP Care assumed operation of the nursing home and assumed Barbara Parke's Medicare provider agreement. (Doc. #1 ¶¶ 22-23.) In September of 1999 Barbara Parke filed for bankruptcy and notified the government of its filing. (Doc. #20 exh. 5.) CMS requested a stay of the administrative proceedings related to the civil money penalty while the nursing home considered whether to continue the proceedings in light of its bankruptcy. (Id. exh. 6.) The ALJ dismissed the case and remanded it to CMS in November of 1999 to consider new issues raised by the bankruptcy. (Id. exh. 7.) In January of 2001, finding no new issues raised by Barbara Parke's bankruptcy, the ALJ vacated his earlier Order to Dismiss and Remand (Id. exh. 11.) The bankruptcy trustee for Barbara Parke informed CMS that the attorney for BP Care would be in contact with CMS about the administrative hearing. (Id. exh. 12.) The parties provided no information indicating further correspondence between BP Care's representative and CMS or the

ALJ. Barbara Parke's bankruptcy trustee withdrew its request for a hearing in May of 2001. With the request for hearing withdrawn, the ALJ dismissed the nursing home's appeal from CMS' survey findings. (Id. exh. 13). This dismissal constituted an end to the administrative proceedings, since an initial determination by CMS is binding unless it is reconsidered, revised, or reversed or modified by a hearing. See 42 C.F.R. § 498.20(b). Since no hearing took place, CMS' initial determination of noncompliance and imposition of a civil money penalty became binding.

CMS notified BP Care, the nursing home's new operator, that it would seek to recover from BP Care the civil money penalty incurred by the nursing home under Barbara Parke. (Doc. #1 ¶¶ 34-35.) On August 3, 2001, Plaintiff BP Care filed this action seeking declaratory and injunctive relief. The parent company of BP Care filed a cross-claim in Barbara Parke's bankruptcy proceeding,[2] arguing that any claim CMS might have for offset, overpayment or recoupment for services rendered prior to the change of ownership be restricted to the bankruptcy estate of Barbara Parke. (Cross-Claim, p. 11, attached to Doc. #5.) On May 1, 2002, this Court consolidated the King cross-claim with the instant action.

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction to hear the case and that Plaintiff fails to state a claim upon which relief can be granted. Plaintiff moves to strike on the grounds that (1) Defendants violated local procedural rules, and (2) Defendants attached exhibits to their Motion to Dismiss, thereby converting the Motion to Dismiss into a Motion for Summary Judgment.

## II.    STANDARDS OF REVIEW

---

[2]In the Matter of Parke Care Center of Silverton, Inc., aka Deer Parke Care Center v. Roger King, Bankruptcy Case 99-15041 through 99-15044, Adversary No. 00-1147.

The Defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). "A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 194 (2d ed. 1990). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that the court does in fact have jurisdiction. See generally RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134-35 (6th Cir. 1996); see also Rogers v. Stratton Indus., 798 F.2d 913, 915 (6th Cir. 1986). "When considering a motion to dismiss for lack of subject matter jurisdiction, this Court may look beyond jurisdictional allegations in the complaint and the Court may consider whatever evidence the parties submit." Fairport Int'l. Exploration, Inc. v. Shipwrecked Vessel Known as The Captain Lawrence, 105 F.3d 1078, 1081 (6th Cir. 1997), vacated on other grounds.523 U.S. 1091 (1998).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In assessing the sufficiency of a complaint, courts must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This rule accords with the purpose of Rule 12(b)(6), which the Sixth Circuit has explained "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Therefore, "[o]n a Fed.R.Civ.P. 12(b)(6) motion, all of the allegations contained in the plaintiff's complaint are accepted as true, and the complaint is construed liberally in favor of the party opposing the motion." Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). At the same time, however, the Court "need not

accept as true legal conclusions or unwarranted factual inferences." Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000).

A court generally cannot consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion, but it may consider material that is properly submitted as part of the complaint. Charal v. Royal Appliance Mfg. Co., No. 94-3284, 1995 WL 490131, *2 (6th Cir. August 15, 1995) (materials integral to the complaint were considered on a Rule 12(b)(6) motion without converting the motion into one for summary judgment). Finally, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir., 1997). Plaintiff's Motion to Strike fails because the administrative record of the proceedings surrounding the imposition of the civil money penalty is just such a document, since Plaintiff refers to it in its Complaint, and Defendants have attached it to its Motion to Dismiss. Therefore, Defendants may attach the administrative record, as they have done under seal, without converting their Motion to Dismiss into a Motion for Summary Judgment.

### III.  ANALYSIS

BP Care's complaint makes two basic due process claims. First, BP Care claims that the administrative proceedings themselves were so flawed as to violate due process in that: (a) CMS did not serve an additional "right to hearing" notice on BP Care after the nursing facility changed ownership, and (b) the ALJ allowed Barbara Parke to withdraw the hearing request unilaterally. Second, BP Care claims that if administrative review is entirely unavailable, CMS' imposition of a prior operator's civil money penalty on the new operator of the previously noncompliant facility violates due process.

## A. DUE PROCESS - SUBJECT MATTER JURISDICTION

BP Care claims that Defendants have violated due process by their conduct in the administrative proceedings connected to the civil money penalty. BP Care cites Defendants' failure to issue an additional "right to hearing" notice to BP Care after the change in ownership of the nursing home and the ALJ's allowance of Barbara Parke's unilateral withdrawal of its hearing request as depriving BP Care of due process. BP Care asserts violations of the Medicare Act and Administrative Procedure Act in addition to violations of the Due Process Clause. Plaintiff also seeks declaratory relief from the ALJ's Order to Vacate Remand (See Doc. #20 exh. 11) and a declaration that the "existing state of the Medicare laws, scheme, practices, and regulations . . . deprive Plaintiff of its Due Process rights under the U.S. Constitution." (Doc. #1 ¶3 of "Prayer for Relief".)

Judicial review of claims arising under the Medicare Act is tightly circumscribed by the Medicare Act's incorporation of a related provision of the Social Security Act, § 405(h), which "channels most, if not all, Medicare claims through this special review system" and "purports to make exclusive the judicial review method set forth in [1320a-7a(e)]." Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 8 (2000); see also Cathedral Rock of N. Coll. Hill v. Shalala, 223 F.3d 354, 359 (6th Cir. 2000); Mich. Ass'n of Homes and Servs. For the Aging, Inc. v. Shalala, 127 F.3d 496, 499 (6th Cir. 1997). Title 42 U.S.C. § 405 provides: "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter." Section 1395ii makes § 405(h) applicable to the Medicare Act. Appeal of a

determination that imposes a civil money penalty must be brought in the United States Court of Appeals. See 42 U.S.C. § 1320a-7a(e). Other decisions imposing non-monetary penalties imposed by CMS are reviewed in the district court. See 42 U.S.C. § 405(g).

Title 42 U.S.C. § 1320a-7a(e) is therefore the sole avenue of review of the imposition of civil money penalties and provides that:

> [a]ny person adversely affected by a determination of the Secretary under this section may obtain judicial review of such determination <u>in the United States Court of Appeals for the circuit in which the person resides</u>, or in which the claim was presented, by filing in such court (within sixty days following the date the person is notified of the Secretary's determination) a written petition requesting that the determination be modified or set aside . . . Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein . . . No objection that has not been urged before the Secretary shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. Upon the filing of the record with it, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of Title 28.

(emphasis added). In <u>Woodstock Care Center, Inc. v. Thompson,</u> 161 F. Supp. 2d 813, 815-16 (S.D. Ohio 2001), Chief Judge Rice concluded that the Sixth Circuit has exclusive jurisdiction to hear a challenge to a DAB decision imposing a civil money penalty. He examined both § 1320a-7a(e) and 42 C.F.R. § 498.90(a)(1), which provides that a DAB decision is final unless "[t]he affected party has a right to judicial review and timely files a civil action in a United States District Court <u>or, in the case of a civil monetary penalty, in a United States Court of Appeals</u> . . . " (emphasis added). This Court agrees that the language of § 1320a-7a(e) and the language of 42 C.F.R. § 498.90(a)(1) grant exclusive jurisdiction over review of the imposition of civil money penalties to the Court of Appeals.

BP Care contends that its claim is a constitutional due process claim and is thereby exempt from the review procedure designated for claims arising under the Medicare Act. BP Care asserts that it had no authority to intervene or join the administrative appeal because "[t]he parties to the hearing are limited to the Secretary and the affected party" under 42 C.F.R. § 498.42. (Doc. #19 at 10.) However, providers and prospective providers have administrative appeal rights under 42 C.F.R. § 498.5(c): "appeal rights of providers and prospective providers. Any provider or prospective provider dissatisfied with a hearing decision may request Departmental Appeals Board review, and has a right to seek judicial review of the Board's decision." 42 C.F.R. § 498.5(c). Here, Plaintiff became the provider when it assumed the provider agreement.

Next Plaintiff argues that it had no notice of the administrative proceedings. The Secretary had already issued a "right to hearing" notice to the provider when it alerted Barbara Parke to the pending imposition of the civil money penalty. (Doc. #1 ¶ 21.) When the nursing facility changed ownership and BP Care assumed Barbara Parke's provider agreement, CMS served its motions in the administrative appeal on BP Care as well as on Barbara Parke. (Doc. #20 exh. 10.) A plaintiff who did not avail itself of the administrative remedies at hand cannot circumvent the administrative review process by filing for review in district court by framing its claim as one arising under the Constitution rather than under the Medicare Act.

A claim "arises under" the Medicare Act "'when both the standing and the substantive basis for the presentation' of the claims" come from the Medicare Act. Heckler v. Ringer, 466 U.S. 602, 615 (1984) (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61 (1975)). Attempting to challenge under the Due Process clause merely the "procedure" used by CMS and not the "substance" or merits of its decision will not surmount the § 405(h) barrier. The Supreme Court specifically

9

rejected such an argument in Heckler v. Ringer: "The inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim 'arises under' the Act, not whether it lends itself to a 'substantive' rather than a 'procedural' label." Id. at 614-15 (citing Mathews v. Eldridge, 424 U.S. 319, 327 (1976)).  Plaintiffs have couched their claim in due process language but "it is apparent that plaintiff is challenging the defendants' conduct that led to the imposition of the civil monetary penalties; in other words, plaintiff's claim arises from the imposition of the monetary penalty." Nursing Inn of Menlo Park v. California Department of Health, No. 02-1675, 2003 WL 1872961 at *5 (N.D. Cal. April 7, 2003).  Judge Rice similarly found in Woodstock Care Center that the Sixth Circuit had exclusive jurisdiction to review constitutional arguments raised in the context of a nursing home's specific challenge to the imposition of a civil money penalty.  See Woodstock Care Center, 161 F. Supp. 2d at 817.

Plaintiff alleges violation of the Due Process Clause, the Medicare Act, and the Administrative Procedure Act and seeks relief from the existing state of the Medicare laws.  This Court has no jurisdiction to hear these claims because all "arise under" the Medicare Act.

### B. SUCCESSOR LIABILITY - FAILURE TO STATE A CLAIM

As a separate question, BP Care challenges the constitutionality of successor liability for a civil money penalty, entirely apart from the proceedings by which the civil money penalty was imposed.  Plaintiff claims that Defendants deprive it of due process by imposing on it the civil money penalty of the prior nursing home operator and exposing BP Care to the risk of liability for overpayments connected to services rendered by the nursing home before its change of ownership.[3]

---

[3]The Court does not address Plaintiff's claim that liability for overpayments connected to pre-sale services should be limited to Barbara Parke's bankruptcy estate.  Plaintiff has asserted no facts that indicate that such claims exist or are likely to occur, and the Government has represented

According to BP Care, it had no opportunity to participate in administrative review of the civil money penalty and thus should not be liable to pay it. Taking all of Plaintiff's claims as true and construing Plaintiff's claim as a challenge merely to the constitutionality of imposing successor liability on a party completely isolated from administrative review, the Court may consider the claim as arising under the Due Process Clause within the meaning of 28 U.S.C. § 1331. See Deerbrook Pavilion, LLC v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). This due process claim is different from Plaintiff's due process claim discussed at section III(A) supra, because there Plaintiff asserted that Defendants' conduct and failure to perform certain actions in the administrative review proceedings by which a specific penalty was imposed deprived it of due process. Here Plaintiff asserts only that imputing liability to new operators of nursing homes for civil money penalties deprives it of due process. The first due process claim directly contests the administrative proceedings and the civil money penalty. The second due process claim contests whether successor liability can be imputed to BP Care at all.

The Court therefore turns to the merits of this claim. Had the administrative proceedings finished long before BP Care assumed Barbara Parke's provider agreement, CMS could still collect the civil money penalty from BP Care. Federal regulations provide that when a new operator of a nursing facility assumes the former operator's provider agreement after a change of ownership, that new owner assumes the agreement subject to the prior terms and conditions. Title 42 C.F.R. § 489.18 states that "[a]n assigned agreement is subject to all applicable statutes and regulations and to the terms and conditions under which it was originally issued including, but not limited to . . . (1)

---

that the Secretary has received and reviewed all claims for pre-sale services, rendered final decisions on pre-sale cost reports, collected resulting overpayments, and is not aware of circumstances that would cause him to reopen final determinations. (Doc. #15 at 3.)

Any existing plan of correction. (2) Compliance with applicable health and safety standards . . . " (emphasis added). The agency's own commentary on what burden an assigned agreement bears is clear: "[a] facility's prior compliance history should be considered regardless of a change in ownership. A facility is purchased 'as is.'" 59 Fed. Reg. 56,174 (1994). Finally, the federal regulations make explicit: "[a] facility may not avoid a remedy on the basis that it underwent a change of ownership." 42 C.F.R. § 488.414(d)(3)(I).

The Eighth Circuit considered the argument here asserted by BP Care in Deerbrook Pavilion, LLC v. Shalala. In Deerbrook Pavilion, a new operator of a nursing facility assumed the previous operator's provider agreement, an agreement subject to a civil money penalty. Following the lead of the Fifth Circuit's decision in United States v. Vernon Home Health, Inc., 21 F.3d 693 (5th Cir. 1994),[4] the Eighth Circuit held that new operators assuming provider agreements subject to civil money penalties are liable to pay them. 235 F.3d at 1104.

A new operator is not required to assume the provider agreement of the former operator. See Vernon Home Health, 21 F.3d at 696 ("[the new operator] could have chosen not to accept the automatic assignment of the provider agreement"); Livingston Care Center, Inc. v. United States, 934 F.2d 719, 720 (6th Cir. 1991) ("participation in the Medicare program is a voluntary undertaking"). To ensure freedom from liability for penalties incurred by the prior operator, a new operator could apply for a new provider agreement. This would require a new application process,

---

[4]The Fifth Circuit held that a new operator assuming a former operator's provider agreement was jointly and severally liable with the old owner for Medicare overpayments. See United States v. Vernon Home Health, Inc., 21 F.3d 693, 696 (5th Cir. 1994). The Eighth Circuit held that the situation in Vernon was indistinguishable from that of Deerbrook: both imposed monetary liabilities. Following Vernon's logic, the Eighth Circuit held Deerbrook to be liable for the civil money penalty under 42 C.F.R. § 498.18(d) (2000). See Deerbrook Pavilion, 235 F.3d at 1104.

however, and the continuous operation of the nursing home during the change in ownership might be disturbed while the new operator awaited certification. Many new operators therefore assume their predecessor's provider agreement. Simply assuming the provider agreement, however, exposes the new operator to any liability incurred under the agreement because a facility is purchased "as is." See 59 Fed. Reg. 56,174 (1994). Because the new operator retains the compliance history - good or bad - of the provider agreement, it is necessary for operators to investigate the compliance history of the nursing facility. Surveys of nursing facilities are available to the public, see 42 U.S.C. § 1395i-3(g)(5)(A).

Because a facility cannot evade a plan of correction merely by changing ownership, and because an assigned agreement is subject to existing plans of correction, a new operator is liable for both the assets and liabilities of the provider agreement. Savvy purchasers likely take these liabilities into consideration when negotiating a purchase price. As the Eighth Circuit noted, "[s]urveys of facilities are matters of public record . . . and checking a facility's regulatory history is an important due diligence task." Deerbrook Pavilion, 235 F.3d at 1105. When BP Care assumed Barbara Parke's provider agreement, it assumed that provider's assets and liabilities. CMS thus has authority to impose the civil money penalty on BP Care, regardless of whether BP Care had access to administrative review. BP Care therefore states no claim upon which relief can be granted.

**IV.   CONCLUSION**

This Court has no jurisdiction to consider Defendants' actions in imposing the civil money penalty on BP Care because the district court is the improper forum in which to file such a challenge. This Court has subject matter jurisdiction to consider the legal challenge to the issue of successor

liability, but Plaintiff has stated no claim upon which relief can be granted.  The Court therefore denies Plaintiff's Motion to Strike and **GRANTS** Defendant's Motion to Dismiss.  (Doc. #15).

    IT IS SO ORDERED.


            ___s/Susan J. Dlott_____
            Susan J. Dlott
            United States District Judge