IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BP CARE, INC. | : |
| Plaintiff, | : |
| v. | : Case No. C-1-01-526 |
| | : Hon. Susan J. Dlott, |
| TOMMY THOMPSON, *ET AL.* | : District Court Judge |
| Defendants. | : Appellate Case No. 03-4365 |

**MOTION FOR STAY OF EXECUTION PENDING APPEAL**

BP Care, Inc., by and through counsel, hereby moves the Court pursuant to Civ.R. 62, to stay the execution of the civil monetary penalty being imposed by the Secretary of the United States Department of Health and Human Services pending appeal of this matter. The reasons for this motion are more fully set forth in the memorandum attached hereto and incorporated herein by reference.

Respectfully submitted,

Geoffrey E. Webster (0001892)
J. Randall Richards (0061106)
Attorneys at Law
Two Miranova Place, Suite 310
Columbus, Ohio 43215
(614) 461-1156
FAX (614) 461-7168

Attorneys for BP Care, Inc.

**MEMORANDUM IN SUPPORT**

In August, 1999, BP Care, Inc. (now Regal Care Residences, Inc.) began leasing and operating a 200-bed skilled nursing facility located in Middletown, Ohio, known as The Residence at Kensington Place ("the Facility"). See King Aff. Regal Care Residences, Inc., is the successor to BP Care, Inc. ("BP Care") through a series of statutory corporate mergers, but this brief will only refer to BP Care because all material events occurred prior to the date BP Care merged out of existence. Id.

Prior to BP Care, the Facility was leased and operated by West Chester Management Company, Inc. ("West Chester"). Id. West Chester is not related to BP Care. Id.

During West Chester's tenure as operator, the Secretary of United States Department of Health and Human Services (hereinafter "the Secretary") conducted an inspection of the Facility and determined that West Chester was not operating it in substantial compliance with Medicare and Medicaid certification requirements. Id. As a result, the Secretary imposed a civil monetary penalty ("CMP") on West Chester totaling $35,650.00. Id. West Chester disagreed and timely requested an administrative hearing. Id.

Before the hearing could proceed, West Chester ceased operating and vacated the Facility due to insolvency and the inability to make lease payments to its landlord. Id. The landlord arranged for BP Care to immediately step in and assume the lease and operations of the Facility so that care and services delivered to the residents would not be interrupted. Id. Shortly thereafter, West Chester filed for bankruptcy protection and the Secretary filed a Proof of Claim for the CMP in the bankruptcy case. Id.

West Chester's bankruptcy trustee elected to proceed with the administrative appeal, but the Administrative Law Judge ("ALJ") assigned to the appeal dismissed it upon learning of the

bankruptcy case and remanded the matter to the Secretary with instructions for the Secretary to issue a new hearing notice to all parties. See ALJ Order dated Nov. 5, 1999. The Secretary, however, refused to do this and instead sought reinstatement of the appeal.

Upon reconsideration, the ALJ reinstated the appeal more than a year later and opined that BP Care could be held responsible for the CMP because BP Care had assumed the existing Medicare Provider Agreement – even though BP Care was never provided notice, and is not and never has been made a party to the administrative appeal as ordered. See ALJ Order dated Jan. 22, 2001.

After the appeal was reinstated, West Chester's bankruptcy trustee refused to authorize any further expenditures to defend the appeal and subsequently withdrew the Request for Hearing without notifying or consulting with BP Care or seeking its consent, despite the fact that the trustee was now aware that the Secretary was attempting to collect the CMP from BP Care as well. Id. The Secretary accepted the trustee's unilateral withdrawal of the appeal and dismissed the matter outright as to BP Care as well as West Chester, despite apparently considering BP Care a party to the appeal and equally responsible for the CMP. Id. Even assuming BP Care was part of the appeal or could have participated (an assumption that BP Care vigorously contests) this withdrawal clearly removed any available administrative remedy related to the CMPs and foreclosed any opportunity for BP Care to step into the shoes of West Chester and contest the survey findings. It also foreclosed any opportunity for BP Care to appeal the ALJ's decision to impose successor liability for the CMP.

Because there is no procedural provision or other method by which BP Care could have intervened or participated in the administrative appeal, and because it had no remedies available at law, BP Care filed this action for declaratory and injunctive relief against the Secretary. BP

Care did not seek a determination on the merits of the appeal issues, but merely a declaration that it was entitled to a notice and opportunity to participate in the administrative process, or in the alternative that the Court find that BP Care has no liability for the CMP through the Secretary's waiver, election of remedy, or otherwise through the inapplicability of successor liability here.

This Court granted the Secretary's motion for summary judgment and BP Care has appealed to the Sixth Circuit. Now that this matter is on appeal, the Secretary is attempting to execute on the CMP and has threatened to offset BP Care's current Medicare payments to satisfy the sum. See attached letter from CMS. BP Care respectfully seeks a stay of that execution for the following reasons.

## II.    LAW AND ARGUMENT

A motion for stay pending appeal is properly made pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. A court considering such a motion does so in light of four factors: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal, (2) the likelihood that the moving party will be irreparably harmed absent a stay, (3) the prospect that others will be harmed if the court grants the stay, and (4) the public interest in granting the stay. See Michigan Coalition of Radioactive Materials Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991), reversed on other grounds, 1992 U.S. App. LEXIS 3955 (6th Cir. 1992). These factors are not prerequisites, but must be balanced together. Griepentrog, 945 F.2d at 153. "[W]hen a greater showing of irreparable harm in the absence of a stay is made, a lesser showing of the likelihood of success on the merits is necessary to support a stay." Nwakanma v. Ashcroft, 352 F.3d 325 (C.A. 6, 2003); see also Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999) (using a sliding scale approach to stays of removal).

4

A.      **Likelihood of irreparable harm to BP Care**

Like most Medicaid nursing homes, BP Care is funded through cost-based Medicare and Medicaid reimbursement systems. Generally, the Facility's Medicare and Medicaid reimbursement rates are based on the reasonable and necessary costs that BP Care incurs in operating the Facility. Thus, BP Care's revenue is used to cover the cost of delivering care and services to the Facility's residents, including patient care, dietary, housekeeping and other services.

The unwarranted payment of more than $35,000 for a penalty for which BP Care is not responsible represents an irreparable harm to BP Care because that sum of money would come out of BP Care's present funding which is intended to, and otherwise would, be spent on patient care. Second King Aff. In the event the Secretary commences repayment by offsetting the sums allegedly owed with the sums its pays to BP Care, the Facility will be forced to cut necessary operating expenses by laying off personnel, including RNs, LPNs, and STNAs. Id. This in turn will harm the residents because they will not be receiving the care that they need. Id. The personnel in housekeeping and dietary will also have to be cut back and the facility will not be as orderly and clean as it normally is on a given day. Id. The patients' meals will not be served as promptly as normal since the number of assistants would have to be scaled back. Id. Moreover, the facility accounts payable vendors will not be paid in a timely manner and will create strains between the facility and the providers of these goods and services. Id. As a result of the vendors not being paid in a timely manner they will stop sending goods and services to the facility unless they are paid COD. Id. These transactions also will result in a reduction of patient care to the facility.

### B. The Secretary will not be harmed by the stay

On the other hand, there is no potential that the Secretary, or any other party, will be harmed by the stay. This matter has been before the agency and the court since 1999 and the Secretary has never been harmed or even asserted harm. Moreover, the Secretary is still pursuing the CMP through the bankruptcy proceedings with West Chester and the potential for recovery of some or all of the funds there still exists. Most importantly, Medicare and Medicaid are and will continue to be the main payor sources for BP Care, and both agencies have the power and authority to offset reimbursement following appeal. Second King Aff. Medicaid pays monthly for services provided the previous month and therefore is always secured at least one month's payments, which is several hundred thousand dollars. Id. Likewise, Medicare is billed monthly only following the provision of services and therefore is always secured two or more months' payments. Id. In light of this security, BP Care further asserts that the posting of bond should not be required.

### C. The public interest lies in granting the stay

The public interest lies in granting the stay because of the irreparable harm that may potentially occur to the residents of the Facility in the event that the CMP is wrongfully and prematurely recouped. As stated above, BP Care operates on a cost based reimbursement system. Id. The revenue it receives from Medicare and Medicaid is intended to cover the cost of providing care and services to its residents at that time. Id. Any wrongful and premature reduction in reimbursement which otherwise would be used for delivering such care and services will cause cut backs in necessary services as well as problems with suppliers and vendors. Id. On the other hand, there is no public interest in the Secretary prematurely collecting a CMP, particularly when the Secretary has the security interest as stated above.

### D. Likelihood of success by BP Care

This Court found that BP Care lacked subject matter jurisdiction to bring this action because it failed to exhaust its administrative remedies. BP Care respectfully disagrees and argues that it had no administrative remedies to exhaust because (a) it was never part of the administrative appeal with West Chester and (b) was never issued a due process notice that it could join the appeal or file its own appeal. In the event the Sixth Circuit finds that BP did in fact not have any administrative remedies (which BP Care believes it will find under the circumstances of this case) then this Court did have subject matter jurisdiction to consider BP Care's declaratory judgment action and BP Care will prevail.

This likelihood of success factor, however, is given lesser weight when there is a greater showing of irreparable harm. See Griepentrog, at 153; Nwakanma at 325; and Sofinet at 707. Here, BP Care has demonstrated that the Secretary's premature recoupment of this large CMP will irreparably harm not only the Facility and its operations, but will likely cause harm to the residents as well. Accordingly, this likelihood of success factor should be balanced in favor of a stay.

### III. CONCLUSION

Clearly, an unusual hardship and irreparable harm will result from the execution of the CMP unless the CMP is stayed pending determination of the appeal. Based on the foregoing, BP

Care believes it reasonable to and does hereby respectfully request an immediate stay of execution, without bond, pending appeal in this matter.

Respectfully submitted,

Geoffrey E. Webster (0001892)
J. Randall Richards (0061106)
Attorneys at Law
Two Miranova Place, Suite 310
Columbus, Ohio 43215
(614) 461-1156
FAX (614) 461-7168

Attorneys for BP Care, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing MOTION was served via U.S. mail upon Jan Holtzman, Assistant United States Attorney, United States Attorney Office, 221 East Fourth Street, Suite 400, Cincinnati, 45202, and upon James Walsh, Assistant Regional Counsel, U.S. Department of Health and Human Services, 233 N. Michigan Avenue, Suite 700, Chicago, Illinois, 60601, on the 10th day of February, 2004.

J. Randall Richards
Attorney at Law