IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BP CARE, INC.

    Plaintiff,

v.

TOMMY THOMPSON, *ET AL.*

    Defendants.

Case No. C-1-01-526

Hon. Susan J. Dlott,
District Court Judge

## AFFIDAVIT OF ROGER KING

Now comes Roger King, President of Regal Care Residences, Inc., and being first duly sworn and cautioned does swear and depose that:

1. I am the President and sole shareholder of Regal Care Residences, Inc., ("Regal Care") successor to BP Care, Inc. ("BP Care"), through a series of statutory mergers with related corporations. I have personal knowledge of the following facts.

2. Regal Care operates a skilled nursing facility located in Middletown, Ohio, known as The Residence at Kensington Place ("the Facility"). Prior to the mergers, BP Care operated the Facility. Because of the identity of ownership and the subsequent mergers, references to Regal Care and BP Care can be used interchangeably. But, all material facts occurred prior to the effective date of BP Care merging out of existence on September 12, 2001.

3. BP Care began operating the Facility on August 1, 1999 when it assumed the lease of the former lessee-operator West Chester Management Company, Inc., doing business as Barbara Parke Care Center (hereinafter "Barbara Parke"). Barbara Parke had become insolvent and was unable to make lease payments.

1


EXHIBIT 6

4. Prior to BP Care taking over in August 1999, Barbara Parke had been surveyed in February 1999 by the Centers for Medicare and Medicaid Services ("CMS") and found to be out of substantial compliance with Medicare and Medicaid certification. CMS imposed a civil monetary penalty ("CMP") against Barbara Parke totaling $35,650.00.

5. On April 30, 1999, Barbara Parke requested an administrative hearing and appealed this CMP.

6. I formed BP Care on July 16, 1999, prior to beginning operations in August. BP Care is not related to either Barbara Parke or the landlord.

7. About a month after BP Care began operating the Facility, Barbara Parke filed bankruptcy.

8. It is my understanding that the Law Offices of Geoffrey E. Webster represented Barbara Parke in the administrative appeal both before and after bankruptcy. Because of his expertise in nursing home matters, Mr. Webster's firm also began representing BP Care, and later Regal Care, when BP Care began operating the Facility. To my knowledge, Mr. Webster handled Barbara Parke's administrative appeal and the representation of BP Care as separate and independent matters, involving separate and individual clients.

9. Once CMS found out that Barbara Parke was bankrupt, it tried to collect the CMP from BP Care, even though an administrative proceeding between Barbara Parke and CMS was already in progress.

10. CMS never notified BP Care of any right to challenge the CMP and it never offered BP Care any opportunity to request an appeal or join the existing appeal.

11. It is my understanding that Barbara Parke's bankruptcy trustee has now withdrawn its request for hearing and that CMS has dismissed the administrative hearing

2

altogether.

    12.    To the extent that BP Care is, was, is presumed to be, or could have been subject to or bound by the appeal, BP Care never authorized any withdrawal on its behalf.

    13.    CMS is still attempting to collect the CMP from BP Care (now Regal Care).

    14.    CMS has never been notified or advised of any right to participate in an administrative hearing on this CMP matter.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Roger King

State of Ohio
County of _Butler_   } ss.:

Sworn to and subscribed in my presence this _3rd_ day of June, 2003.

_____
Notary Public

My commission expires: _Aug. 24, 2005_

**SHARON L. LANDRETH**
Notary Public, State of Ohio
My Commission Expires Aug. 24, 2005

3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BP CARE, INC. | : | |
| Plaintiff, | : | |
| | : | Case No. C-1-01-526 |
| v. | : | |
| | : | Hon. Susan J. Dlott, |
| TOMMY THOMPSON, *ET AL.* | : | District Court Judge |
| Defendants. | : | Appellate Case No. 03-4365 |

### SECOND AFFIDAVIT OF ROGER KING

Now comes Roger King, President of Regal Care Residences, Inc., and being first duly sworn and cautioned does swear and depose that:

1. I am the President and sole shareholder of Regal Care Residences, Inc., ("Regal Care") successor to BP Care, Inc. ("BP Care"), through a series of statutory mergers with related corporations. I have personal knowledge of the following facts.

2. The unwarranted payment of more than $35,000 for a penalty for which BP Care is not responsible represents an irreparable harm to BP Care because that sum of money would come out of BP Care's present funding which is intended to, and otherwise would, be spent on patient care.

3. In the event the Secretary commences repayment by offsetting the sums allegedly owed with the sums its pays to BP Care, the Facility will be forced to cut necessary operating expenses by laying off personnel, including RNs, LPNs, and STNAs. This in turn will harm the residents because they will not be receiving the care that they need.

4. The personnel in housekeeping and dietary will also have to be cut back and the facility will not be as orderly and clean as it normally is on a given day.

5. The patients' meals will not be served as promptly as normal since the number of assistants would have to be scaled back.

6. Moreover, the facility accounts payable vendors will not be paid in a timely manner and will create strains between the facility and the providers of these goods and services. As a result of the vendors not being paid in a timely manner they will stop sending goods and services to the facility unless they are paid COD. These transactions also will result in a reduction of patient care to the facility.

7. Medicare and Medicaid are and will continue to be the main payor sources for BP Care, and both agencies have the power and authority to offset reimbursement following appeal.

8. Medicaid pays monthly for services provided the previous month and therefore is always secured at least month's payments, which is several hundred thousand dollars.

9. Likewise, Medicare is billed monthly only following the provision of services and therefore is always secured two or more months' payments also.

10. The attached Order of Remand and Dismissal from ALJ Montano is a true and accurate copy of the order maintained in my files relating this litigation.

11. The attached Ruling Granting HCFA's Motion to Vacate Order of Remand and Dismissal from ALJ Montano is a true and accurate copy of the ruling maintained in my files relating this litigation.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Roger King

State of Ohio
County of Butler } ss.:

Sworn to and subscribed in my presence this 10th day of February, 2004.

_____
Notary Public

My commission expires: 4/1/2004

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Departmental Appeals Board

Civil Remedies Division

| | |
|---|---|
| In the Case of: | |
| Barbara Parke Care Center, | DATE: JAN 22 2001 |
| Petitioner, | |
| - v. - | Docket No. C-99-481 |
| Health Care Financing Administration. | |

RULING GRANTING HCFA'S MOTION TO VACATE ORDER
OF REMAND AND DISMISSAL

On November 5, 1999, I issued an Order of Remand and Dismissal in the above-captioned case. In my Order, I noted that Petitioner had filed for bankruptcy in the U.S. Bankruptcy Court, Southern District of Ohio. I noted also that the Health Care Financing Administration (HCFA) had filed a Motion to Stay Proceedings Due to Petitioner's Pending Bankruptcy. Because the pending bankruptcy proceedings suggested to me that resolution of the issues herein would be a lengthy process, I denied HCFA's motion. I concluded that it was neither necessary nor administratively feasible for me to retain oversight responsibility for this case within the bankruptcy context. I therefore remanded this case to HCFA for consideration and determination of new issues, pursuant to 42 C.F.R. § 498.56(d).

On January 9, 2000, HCFA filed a motion to vacate the Order of Remand and Dismissal. Petitioner filed a brief in opposition to HCFA's motion, and HCFA filed a reply brief.

For the reasons set forth below, I GRANT HCFA's motion. The Order of Remand and Dismissal, dated November 5, 1999, is VACATED.

DISCUSSION

HCFA's motion to vacate is based on its contention that the pending bankruptcy of Petitioner does not pose a "new issue" within the meaning of 42 C.F.R. § 498.56(d), and thus, there exists no basis for a remand to HCFA. HCFA argues, inter alia, that Petitioner's bankruptcy proceedings have no bearing on HCFA's findings of noncompliance or on HCFA's imposition of the civil money penalty (CMP).

EXHIBIT

2

HCFA makes the additional argument that the automatic stay provision of the United States Bankruptcy Code, found at 11 U.S.C. § 362(a), does not apply to this case. Moreover, according to HCFA, even if 11 U.S.C. § 362(a) were to be deemed applicable, this administrative proceeding would fall under the statutory exception found at 11 U.S.C. § 362(b)(4), which excepts from the automatic stay actions by a governmental unit to enforce its police or regulatory power.

In opposing HCFA's motion, Petitioner asserts that remand to HCFA was appropriate because its bankruptcy is a "new issue" impinging on its rights. Moreover, Petitioner argues, the fact that it is seeking dissolution under Chapter 7 of the Bankruptcy Code, rather than reorganization under Chapter 11, is further support that the remand order should not be vacated. According to Petitioner, "[i]n light of [its] present status and impending dissolution, all of the remedies imposed by HCFA, with the exception of the CMP, are ineffective and meaningless." P. Brief, at 4.

Furthermore, contrary to HCFA, Petitioner argues that the automatic stay provision of the U.S. Bankruptcy Code does apply to this matter. Petitioner claims that HCFA has only a pecuniary interest in this matter since it is seeking a monetary remedy from Petitioner, and thus, this matter does not fall within the scope of the statutory exception to the automatic stay.

In its reply, HCFA asserts that Petitioner has "fail[ed] to identify any substantial issues that would merit a remand." HCFA Reply, at 3. Moreover, HCFA points out, _inter alia_, that prior to filing for bankruptcy, the facility had a change of ownership, and the new owner has taken on the facility's provider agreement, as well as liability for remedies that HCFA had imposed against the former owner.

Upon consideration of the parties' arguments, I conclude that there are no new issues that warrant remanding this case to HCFA. Although Petitioner argues in its brief that new issues have arisen from its bankruptcy proceedings, other than merely stating that its bankruptcy is a "new issue," it has not identified with any specificity what those issues are.

Moreover, I am not persuaded by Petitioner's position that its impending dissolution has, in effect, "mooted out" this administrative action. HCFA argues that Petitioner's pending bankruptcy does not prevent this matter from continuing to move forward. I agree. As Petitioner itself appeared to acknowledge in its brief (_See_ P. Brief, at 4, 9), HCFA's imposition of the

3

CMP is still a viable remedy. Moreover, the fact that the facility is now under new ownership does not "erase" its prior compliance history. HCFA correctly asserts that the new owner of the facility, having assumed Petitioner's provider agreement, is now liable for any pending enforcement actions concerning the former owner's noncompliance with the Medicare and Medicaid participation requirements.

Furthermore, Petitioner's assertions that this case is subject to the automatic stay provision of the U.S. Bankruptcy Code are similar to those made by the petitioners in the Sun cases. In those cases (SunRise Care & Rehabilitation for Lufkin, Docket No. C-98-484, et al), I and seven other administrative law judges issued a collective ruling denying the petitioners' motion for automatic stay. See Ruling Denying Petitioners' Motion for Automatic Stay, dated December 16, 1999, SunRise Care & Rehabilitation for Lufkin, Docket No. C-98-484, et al. I am not persuaded that this case merits a different conclusion and deny Petitioner's arguments that this case is subject to an automatic stay.

Based on the foregoing, I conclude that this case should go forward regardless of the bankruptcy action. I GRANT HCFA's motion. The Order of Remand and Dismissal, dated November 5, 1999, is VACATED.

By February 5, 2001, the parties shall confer and advise my office, in writing, of three dates and times when they are available for a telephone prehearing conference.

Alfonso J. Montano
Administrative Law Judge

Addressees:

Geoffrey E. Webster, Esq.
17 South High St., Suite 600
Columbus, Ohio 43215

           and

James P. Walsh
Assistant Regional Counsel
DHHS-Region V
233 N. Michigan Ave., Suite 700
Chicago, Illinois 60601

DEPARTMENT OF HEALTH AND HUMAN SERVICES

Departmental Appeals Board

Civil Remedies Division

| | |
|---|---|
| In the Case of:<br><br>Barbara Parke Care Center,<br><br>Petitioner,<br><br>- v. -<br><br>Health Care Financing Administration. | DATE: NOV 5 1999<br><br>Docket No. C-99-481 |

## ORDER OF REMAND AND DISMISSAL

On September 24, 1999, counsel for Petitioner filed a document entitled "Suggestion of Bankruptcy Filing," in which he stated that Petitioner had filed a bankruptcy proceeding under the Bankruptcy Code. Attached to this submission was a copy of the Chapter 7 bankruptcy notice concerning Petitioner which was filed in the U.S. Bankruptcy Court, Southern District of Ohio.

On October 1, 1999, counsel for the Health Care Financing Administration (HCFA) filed a Motion to Stay Proceedings Due to Petitioner's Pending Bankruptcy. HCFA's counsel indicated that, to the extent Petitioner's counsel still had authority to represent Petitioner without written approval from the bankruptcy trustee or the bankruptcy court, Petitioner's counsel did not oppose the motion.

The bankruptcy proceedings pending in the U.S. Bankruptcy Court, Southern District of Ohio, suggest to me that resolution of the issues herein will be a lengthy process. Therefore, I deny HCFA's motion.

Furthermore, I conclude that it is not necessary and it is not administratively feasible for me to retain oversight responsibility for this case within the bankruptcy context. I have therefore determined to remand this case to HCFA for consideration and determination of new issues, pursuant to 42 C.F.R. § 498.56(d).

If all disputed issues are not resolved while the case is on remand to HCFA, HCFA shall issue a new notice letter to Petitioner. HCFA's issuance of the new notice letter will terminate its obligations under 42 C.F.R. § 498.56(d) and this Order. On receiving HCFA's new notice letter, Petitioner may

EXHIBIT

2

exercise its right to request a hearing in accordance with 42 C.F.R. § 498.40. Accordingly, this case is remanded to HCFA pursuant to 42 C.F.R. § 498.56(d) and dismissed from my hearing docket.



Alfonso J. Montano
Administrative Law Judge

Addressees:

Geoffrey E. Webster, Esq.
17 South High St., Suite 600
Columbus, Ohio  43215

      and

James P. Walsh, Esq.
Assistant Regional Counsel
DHHS - Region V
105 West Adams, Room 1900
Chicago, Illinois  60603

# CMS
### CENTERS for MEDICARE & MEDICAID SERVICES

Midwestern Consortium
Division of Survey and Certification

Refer to IW 10
Provider Number: 36-5437

January 23, 2004
By facsimile & certified mail

Vic Hickman, Administrator
Residence at Kensington Place
(formerly known as Barbara Parke Care Center)
751 Kensington Street
Middletown, OH 45044

Dear Mr. Hickman:

Re: Civil money penalty case number: 199905LTC143

In accordance with the provisions of Sections 1819(h) and/or 1919(h) of the Social Security Act and the regulations at 42 CFR Sections 488.430 to 488.444, on March 11, 1999 we advised you that a civil money penalty (CMP) was imposed against Residence at Kensington Place (previously known as Barbara Parke Care Center) for failure to be in substantial compliance with the Federal requirements for nursing homes participating in the Medicare/Medicaid programs. On June 10, 1999, we informed you that the CMP was due and payable fifteen days after the final administrative decision was made following the hearing you requested.

The final administrative decision was made on June 4, 2001, when the administrative law dismissed the case. On March 22, 2002 we informed you that the CMP imposed effective March 11, 1999 was due and payable on April 11, 2002. We further notified you that if the CMP was not paid on the due date, interest would be assessed. The rate of interest for Medicare was 13.75%. For Medicaid, the rate of interest was 8%. This is in accordance with the regulations at 42 CFR 488.442. As of today, we have not received the payment.

This is to notify you that the CMP imposed effective March 11, 1999, including interest, must be paid by February 11, 2004. If the total amount of the CMP (including interest to date) is not received by this date, the CMP and any additional interest accrued after this date, will be deducted from sums owing to you without further notice.

If paid by February 11, 2004, the total amount of the CMP due is $40,748.62. This amount represents the imposition of a CMP in the amount of $3,050.00 per day for nine days beginning on February 1, 1999 and continuing through February 9, 1999, and then in the amount of $100.00 per day for 82 days,

233 North Michigan Avenue
Suite 600
Chicago, Illinois 60601-5519

Richard Bolling Federal Building
601 East 12th Street, Room 235
Kansas City, Missouri 64106-2808

beginning on February 10, 1999 and continuing through May 2, 1999. This amount also includes $5,098.00 interest.

The CMP is payable by check. To assure proper crediting of your payment, please ensure the CMP case number, shown above, appears on your check, as well as any correspondence relating to the CMP and remit your check to:

> Centers for Medicare & Medicaid Services
> Division of Accounting
> Post Office Box 7520
> Baltimore, Maryland 21207-0520
> Attention: CMP Collections

If you are using a delivery service such as Federal Express, use the following address only:

> Centers for Medicare & Medicaid Services
> Division of Accounting
> 7500 Security Boulevard
> C3-09027
> Baltimore, Maryland 21244

Please note that your check must be mailed to one of the above addresses – not to the Chicago Regional Office. However, a copy of your check must be sent to the attention of Eugenia Tang at the Chicago Regional Office. This is to ensure that we know the CMP has been paid.

If you need further assistance, please contact me at (312) 886-5215. Information may also be faxed to (312) 353-8053. Correspondence should be sent to my attention at the Chicago office.

Sincerely,

*Eugenia Tang*

Eugenia Tang
Principal Program Representative
Michigan/Ohio Long Term Care Branch

cc: Ohio Department of Health
Ohio Department of Job and Family Services
AdminaStar Federal Inc.