RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BP CARE, INC.,

        *Plaintiff-Appellant,*

v.

TOMMY THOMPSON, Secretary, United States Department of Health and Human Services; DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        *Defendants-Appellees.*

No. 03-4365

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 01-00526—Susan J. Dlott, District Judge.

Argued: November 5, 2004

Decided and Filed: February 15, 2005

Before: COLE and ROGERS, Circuit Judges; COHN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Geoffrey E. Webster, Columbus, Ohio, for Appellant. James P. Walsh, ASSISTANT REGIONAL COUNSEL, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Chicago, Illinois, for Appellees. **ON BRIEF:** Geoffrey E. Webster, J. Randall Richards, Columbus, Ohio, for Appellant. James P. Walsh, ASSISTANT REGIONAL COUNSEL, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Chicago, Illinois, Jan M. Holtzman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellees.

---

## OPINION

    ROGERS, Circuit Judge. In this case, BP Care, Inc., contests the Department of Health and Human Services' policy of imposing successor liability for money penalties incurred because of a violation of a Medicare provider agreement. The Department of Health and Human Services assessed civil money penalties ("CMPs") against West Chester Management Company, doing

---

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

business as Barbara Parke Care Center ("Barbara Parke"), because of inadequate patient care at a nursing home Barbara Parke leased and operated under a Medicare provider agreement. The agency issued Barbara Parke a notice of its right to a hearing to contest the CMPs. Over the ensuing two years, Barbara Parke (1) requested a hearing before an administrative law judge on the charges, (2) ceased operating the facility and assigned its provider agreement to another company, (3) declared bankruptcy, and (4) withdrew its request for a hearing on the CMPs. The Department of Health and Human Services seeks to collect the CMPs from BP Care, the new lessee/operator of the nursing home, under a successor liability theory. BP Care sued in federal district court, alleging that the successor liability scheme violated the Medicare Act's CMP provisions, denied BP Care procedural due process, and constituted arbitrary and capricious agency action under the Administrative Procedure Act. The district court found that it lacked subject-matter jurisdiction over some claims but reached the merits of one: it found that BP Care failed to state a claim in alleging that successor liability for CMPs denied successor Medicare providers due process of law. We affirm, but on different grounds. The district court lacked subject-matter jurisdiction over all of BP Care's claims and therefore should not have reached the due process issue.

I.     **Background**

Barbara Parke operated the nursing home under a lease until August of 1999. In February 1999, a Department of Health and Human Services ("HHS") inspector surveyed the nursing home and found that the facility did not meet Medicare requirements concerning quality of care, quality of life, provision of services, and staff treatment of patients. As Medicare regulations require, HHS served Barbara Parke with a notice of its intent to assess CMPs totaling $35,650.00 on the basis of the deficiencies found in the survey. Regulations require HHS to explain in the notice that the facility has the option of requesting a hearing regarding the CMPs, or accepting the penalty and receiving a thirty-five percent reduction in the amount due. 42 C.F.R. §§ 488.434, 488.436 (2004). On April 30, 1999, Barbara Parke responded to the notice by challenging the validity of each charge and demanding a hearing before an administrative law judge ("ALJ").

In August 1999, Barbara Parke became insolvent and was unable to continue lease payments. Meanwhile, BP Care, Inc., formed on July 16, 1999. The same attorney who represented Barbara Parke in the early stages of the CMP proceedings, Geoffrey Webster, also incorporated and represented BP Care. In August 1999, Barbara Parke assigned both its lease and its Medicare provider agreement to BP Care. Because BP Care used Barbara Parke's Medicare provider number, it was able to continue operating the nursing home without interruption. This continuity, however, also carried a downside: under HHS policy, BP Care became liable for the outstanding CMPs when it assumed the lease.[1]

BP Care received no communication at this point from HHS notifying BP Care of its potential liability. One month later, on September 13, 1999, Barbara Parke filed for Chapter 11 bankruptcy. It then notified the ALJ charged with conducting the CMP appeal hearing of this development. On October 1, 1999, counsel for the Center for Medicare and Medicaid Services ("CMS")[2] moved the ALJ to stay proceedings on the CMP appeal for ninety days until Barbara

---

[1] Neither the Medicare Act nor the relevant regulations set forth a policy of successor liability for CMPs. However, both decisions of the HHS Departmental Appeals Board ("DAB") and the HHS State Operations Manual endorse the policy. *See CarePlex of Silver Spring v. Health Care Fin. Admin.*, Docket No. A-98-94, CR536, DAB No. 1683, 1999 WL 985363 (H.H.S.) (Apr. 13, 1999); Centers for Medicare and Medicaid Services, State Operations Manual § 3210E (2004).

[2] The name of this arm of the Department of Health and Human Services changed from Health Care Financing Administration to Centers for Medicare and Medicaid Services while the CMP proceeding was pending. For simplicity, we refer to that office as "CMS."

Parke decided whether it wished to continue its appeal in light of its bankruptcy. On November 5, 1999, the ALJ, rather than issuing a stay, dismissed and remanded the case to CMS, ordering that CMS "issue a new notice letter to Petitioner" if all new issues were not resolved on remand. The order designated "Barbara Parke Care Center" as the petitioner. The order explained that Barbara Parke's bankruptcy would likely be drawn out, making it difficult for the ALJ to maintain administrative oversight of the case. *Id.*

CMS responded by moving to vacate the order of remand and dismissal. In its motion, CMS signaled for the first time its intent to impose successor liability, stating that a stay of proceedings pending termination of the bankruptcy matter would "not only [delay CMS's] ability to recover any sums from the bankruptcy estate, but . . . also [delay CMS's] ability to exercise its right to recover from [Barbara Parke's] successor, BP Care, Inc., to whom it appears the provider agreement has been automatically assigned." J.A. at 237. CMS served this motion on both Barbara Parke's bankruptcy trustee and BP Care's president. The ALJ granted the motion, reinstating the proceedings before him, on January 22, 2001. In vacating his previous decision to remand to CMS, the ALJ concluded that Barbara Parke's bankruptcy created no new issues in the case, since the bankruptcy did not automatically stay the CMP proceedings, and since CMS was authorized to impose successor liability for the CMPs on BP Care. In May 2001, Barbara Parke's bankruptcy trustee withdrew Barbara Parke's request for a hearing in the CMP proceeding.

Rather than appealing the Secretary's decision to impose CMPs through the narrow means provided in the Medicare and Social Security Acts, *see* 42 U.S.C. §§ 405(h), 1320a-7a(e), 1320ii, BP Care filed this action in the United States District Court for the Southern District of Ohio. The complaint avers that BP Care has no administrative remedy under the Medicare scheme. The complaint asserts jurisdiction under 28 U.S.C. §§ 1331, 1343, 1346, 1361, and 1651. It alleges that, because BP Care was not named as a party in the CMP proceedings and was not served with a right to hearing notice, it was unable to request a hearing regarding imposition of the penalties. Further, the complaint alleges, HHS's permitting Barbara Parke to withdraw unilaterally its request for a hearing "removed any available administrative remedy related to the CMPs" for BP Care. The complaint asserts that the imposition of CMPs without notice or an opportunity to be heard violates BP Care's procedural due process rights, and also, more generally, that the successor liability concept advanced by HHS violates procedural due process. The complaint alleges that HHS's conduct of the CMP proceedings violated 42 U.S.C. § 1395i-3(h)(2) (the section of the Medicare Act permitting HHS to impose CMPs for substandard performance of Medicare nursing facilities) and was arbitrary and capricious and an abuse of agency discretion in violation of 5 U.S.C. § 706.

The complaint seeks a declaratory judgment and injunction ordering HHS to issue a notice to BP Care affording it the right to a hearing on the CMPs. It prays the court to void the ALJ's January 22, 2001 findings that the automatic stay in bankruptcy did not apply to the CMP proceedings, and that CMS may properly impose successor liability for the CMPs on BP Care. BP Care's parent company, the King Entities, also cross-claimed in Barbara Parke's bankruptcy proceedings, seeking a declaration that any liability for the CMPs be paid out of the bankruptcy estate or paid from an escrow account established at the time of the Barbara Parke-BP Care transaction to cover Medicare overpayments. The district court consolidated that cross-claim with the declaratory judgment action. The Secretary of Health and Human Services moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim.

42 U.S.C. § 405 requires those contesting the decisions of the Commissioner of Social Security to present their claims to the agency and to exhaust avenues of administrative relief before filing an action in federal court. BP Care concedes that it has not obeyed the strictures of § 405, and that this case is not an appeal of an agency action over which this court would have original jurisdiction. *See* 42 U.S.C. § 1320a-7a(e). Under the narrow reading of *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), adopted in *Shalala v. Illinois Council on Long*

*Term Care, Inc.*, 529 U.S. 1 (2000), parties affected by Medicare administrative determinations may sue in federal court under 28 U.S.C. § 1331, bypassing § 405 preclusion, only where requiring agency review pursuant to § 405(h) "would mean no review at all." *Ill. Council*, 529 U.S. at 19. (This concept will be called the *Michigan Academy* exception.) The issue here, therefore, is whether BP Care could have challenged the agency's successor liability scheme administratively.

The district court grouped BP Care's claims into two categories, finding that the first lacked subject-matter jurisdiction and the second failed to state a claim. First, the court addressed BP Care's claim that HHS violated procedural due process by failing to issue BP Care a new "right to hearing" notice and by permitting Barbara Parke unilaterally to withdraw its request for a hearing. The district court found that BP Care could have contested these actions within the administrative process because it was a provider with the right to appeal a hearing decision to the agency's Departmental Appeals Board ("DAB") pursuant to 42 C.F.R. § 498.5. *BP Care v. Thompson*, 337 F. Supp. 2d 1021, 1027 (S.D. Ohio 2003). The court therefore found that this claim "arose under" the Medicare Act and did not form a distinct constitutional claim under the Due Process Clause, and that BP Care was barred from bringing a federal court action rather than exhausting administrative remedies. *Id.* The court also noted that BP Care was served with CMS's motions in the CMP proceedings after it assumed the provider agreement, and therefore had notice of the proceedings. *Id.* Second, the district court viewed BP Care's challenge to HHS's successor liability scheme as a separate constitutional claim "completely isolated" from BP Care's objections to its treatment in the administrative review process; therefore, the court reached the merits of this claim. *Id.* at 1028. Relying on *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100 (8th Cir. 2000), the court found that the Medicare Act and regulations authorized successor liability and that BP Care therefore failed to state a claim. *Id.* at 1029. BP Care timely appealed.

## II.    Jurisdiction Under 28 U.S.C. § 1331

The district court did not have jurisdiction under 28 U.S.C. § 1331 to hear any of BP Care's claims. This is because each of BP Care's claims arises under the Medicare Act, and BP Care failed to present the claims, and exhaust its remedies in an HHS administrative proceeding, as required by 42 U.S.C. §§ 1395ii and 405(h). Under *Illinois Council*, § 405(h) forms the exclusive method for seeking review of claims arising under the Social Security and Medicare Acts. 529 U.S. at 10. The district court correctly dismissed BP Care's first claim for lack of subject-matter jurisdiction, but erred in reaching the merits of the second after concluding that it escaped the stringent jurisdictional bar of § 405(h).

### a.    Statutory Framework

This conclusion is required by a group of nested jurisdictional provisions that narrowly limits avenues for contesting CMPs assessed for violations of a Medicare provider agreement. Section 1395i-3 of the Social Security Act sets forth substantive requirements for care in Medicare-participating skilled nursing facilities. That section allows HHS to conduct surveys of nursing homes to determine whether they are compliant, and to impose CMPs for non-compliance. 42 U.S.C. § 1395i-3(h)(2)(B)(ii) (2001). Section 1320a-7a(c) of the same title requires the Secretary to provide notice and an opportunity for a hearing at which the adversely affected person is represented by counsel. A person adversely affected by the Secretary's final determination regarding CMPs may obtain judicial review by suing in a United States Court of Appeals within sixty days after notification of the Secretary's decision. *Id.* § 1320a-7a(e). The person may raise before the reviewing court only those objections voiced in agency administrative proceedings. *Id.* Section 1395ii of the same title makes the jurisdiction-channeling provision of the Social Security Act, *id.* § 405(h), applicable to Medicare determinations. That section states, "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." *Id.* § 405(h). Section 405 requires both that those

challenging agency decisions present their claims to the agency, and that they exhaust administrative remedies before suing in the appropriate federal court. Medicare regulations set forth the exclusive process for contesting CMPs within the agency.

      b.      **Reliance on *Deerbrook Pavilion***

None of the recognized exceptions to § 405(h)'s jurisdictional bar on claims arising under the Medicare Act applies here. In finding jurisdiction over BP Care's challenge to the constitutionality of HHS's successor liability scheme for CMPs, the district court implicitly relied on a case-law exception to § 405(h) that asks whether a claim is "wholly collateral" to the agency action—an exception that the *Illinois Council* case sharply limited. *Illinois Council* read *Michigan Academy* to hold that plaintiffs may sue under 28 U.S.C. § 1331 alleging deficiencies in Medicare adjudicative processes only "where application of § 405(h) . . . would mean no review at all." 529 U.S. at 19. Even though BP Care was liable for the CMPs only as a successor to the Medicare provider agreement, BP Care could still have sought agency review of the penalties.

The district court found that BP Care's second claim, its challenge to HHS's successor liability policy, was "entirely apart from the proceedings by which the civil money penalty was imposed." *BP Care,* 337 F. Supp. 2d at 1028. Therefore, "the Court may consider the claim as arising under the Due Process Clause within the meaning of 28 U.S.C. § 1331," and 42 U.S.C. § 405(h)'s jurisdictional bar did not apply. *Id.* The district court cited an Eighth Circuit case, *Deerbrook Pavilion, LLC v. Shalala,* 235 F.3d 1100 (8th Cir. 2000), in support of its exercise of jurisdiction. In *Deerbrook,* the only federal court case to assess the constitutionality of successor liability for Medicare CMPs under the Due Process Clause, the Eighth Circuit concluded that *Illinois Council* did not require it to dismiss the plaintiff nursing home's claim for lack of jurisdiction. 235 F.3d at 1103. *Deerbrook* held that the successor's claim did not concern whether its predecessor's conduct warranted CMPs under applicable law, but instead the different question of whether the successor was liable for a prior operator's CMPs. *Id.* Therefore, the lower court in that case had jurisdiction. *Id.*

However, the Eighth Circuit's decision in *Deerbrook Pavilion* does not support the district court's exercise of jurisdiction in this case. First, *Deerbrook Pavilion* is distinguishable, and it may also convey the false impression that Medicare providers may choose whether to press their claims in the first instance in an administrative proceeding or in a federal court case. The *Deerbrook Pavilion* court stated conclusorily that "[i]t is questionable whether Deerbrook even had the standing (or the incentive) to intervene in contesting the imposition of CMPs on its predecessor." 235 F.3d at 1103. Here, BP Care did have standing to request a hearing. *See infra* Part II.c. The fact that BP Care may not have had *incentive* to participate in the administrative proceeding is irrelevant to the inquiry under *Illinois Council*, which requires that parties seek review of agency action within the administrative setting where possible.

Even more compelling is the manifest tension between the holding of *Deerbrook Pavilion* and the holding of the Supreme Court in *Illinois Council*. The Eighth Circuit in *Deerbrook Pavilion* held that the plaintiff's general objection to HHS's successor liability scheme for CMPs formed a "separate issue" from more specific allegations that a provider's conduct did not warrant CMPs; the latter would be reviewable in an HHS adjudication, while the former was not. 235 F.3d at 1103. *Illinois Council,* however, held that § 405(h)

> foreclose[s] distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact-specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. . . . *Claims for money, claims for other benefits, . . . and claims that contest a sanction or remedy may all similarly rest upon individual fact-*

> related circumstances, . . . or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).

529 U.S. at 13–14 (emphasis added). The Court further noted, "The fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one, . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Id.* at 23. Although ALJs in Medicare administrative proceedings generally do not decide constitutional issues, and although BP Care's challenge to the constitutionality of successor liability is not fact-specific, BP Care's challenge to the successor liability scheme still "arises under" the Medicare Act in that BP Care seeks to avoid an HHS administrative penalty.[3]

By characterizing the factual aspects of a challenge to CMPs as intertwined with the agency adjudication and the broader legal aspects of the challenge as separate from the adjudication, the Eighth Circuit in *Deerbrook,* and the district court in this case, relied on the "entirely collateral" exception to § 405(h) preclusion, which *Illinois Council* severely limits.[4] Therefore, unlike the district court, we conclude that *Deerbrook Pavilion* does not dictate a finding that the district court had jurisdiction over BP Care's constitutional challenge to the successor liability scheme.

### c.    Application of the *Michigan Academy* Exception

In *Illinois Council*, the Supreme Court limited its earlier decision in *Michigan Academy* to hold that § 405(h) applies unless requiring agency review of the plaintiff's claim would effectively mean "no review at all." 529 U.S. at 19. In the context of this case, requiring exhaustion of administrative remedies pursuant to 28 U.S.C. § 405(h) would mean no review of BP Care's claims in only three conceivable situations: (1) if the agency could not consider the subject matter of BP Care's challenge; (2) if BP Care were not a party to the administrative proceedings or lacked standing to intervene in them; or (3) if the procedural posture of the adjudication after Barbara Parke withdrew its request for a hearing made it impossible for BP Care to appeal the CMPs. A review of the regulations governing the Medicare CMP determination for nursing facilities shows that none of these three situations was present in this case.

---

[3] The facts here are in some respects similar to those of *Mathews v. Eldridge*, 424 U.S. 319 (1976), in that the plaintiff seeks to gain an administrative benefit or to avoid an administrative penalty on the basis of a claim that the agency provided constitutionally deficient procedures. In *Eldridge*, the Court labeled the plaintiff's federal action collateral to his claim for benefits; therefore, the Court found jurisdiction. In *Eldridge*, however, the plaintiff had presented his claim to the agency and pursued *some* avenues of agency review, even though he did not fully exhaust administrative remedies. *Id.* at 326–27. The Court in *Illinois Council* distinguished *Eldridge* from cases in which the plaintiff does not present its challenge to the agency at all. 529 U.S. at 14–15. Presentation of claims is a "nonwaivable and nonexcusable requirement." *Id.* at 15. Here, as in *Illinois Council*, BP Care completely failed to present its claim to the agency.

[4] The district court opinion does not use the word "collateral," but instead uses the phrases "completely isolated," "entirely apart," and "separate question." 337 F. Supp. 2d at 1028. By rejecting the use of the "entirely collateral" exception here, we do not mean to question this court's assumption in *Cathedral Rock of North College Hill, Inc. v. Shalala,* 223 F.3d 354 (6th Cir. 2000), that the exception survives *Illinois Council* in limited cases. *Id.* at 361-62. *Cathedral Rock's* holding appears to be limited to cases involving a request for preliminary relief while administrative proceedings are ongoing. The discussion of the "entirely collateral" exception in *Cathedral Rock* recognized at the outset that *Eldridge* "did not create an exception to the application of § 405(g) and (h), but rather required the Secretary to excuse some of its procedural requirements so that its decision would be considered a 'final decision' and judicial review could follow under § 405(g)." *Cathedral Rock,* 223 F.3d at 362 (citing *Ill. Council,* 529 U.S. at 14–15). Here, because BP Care did not present its claims to the agency at all, these cases are inapposite. Moreover, BP Care's complaint seeks remedies that are inextricably intertwined with the CMP administrative proceeding, in that they request the court to nullify findings the ALJ made, or to deny the legal effect of the final action of imposing CMPs on the nursing home.

First, HHS did have the authority to consider the subject matter of BP Care's core challenge—i.e., its claim that it should not be liable for CMPs. In contrast, in *Michigan Academy*, the agency was unable to review the subject matter of the plaintiff's claim, and therefore the application of § 405(h) would have completely denied the plaintiff review. *Michigan Academy* concluded that Congress intended for only *amount determinations* under Part B of the Medicare Act to be subject to agency review, and thus also to the jurisdiction filter of § 405(h). 476 U.S. at 680; *see also Ill. Council*, 529 U.S. at 15–16. Therefore, challenges to the *method* HHS used to compute benefits could form the basis of a separate cause of action in federal court.

Both *Illinois Council* and this case, on the other hand, involve Medicare Part A. The Court held in *Illinois Council* that *Michigan Academy*'s broad exception to § 405(h) applied only to a situation like that under Medicare Part B, where a category of decisions is not subject to an administrative hearing.[5] *Id.* at 17–18. Here, HHS ALJs may assess both whether CMS properly concluded that the facility was non-compliant and whether CMS therefore properly imposed CMPs, and also whether CMS properly weighed the relevant factors to determine the amount of the CMPs. 42 C.F.R. §§ 488.438(e)–(f), 488.430. When reviewing the amount of CMPs, the ALJ may consider such factors as the facility's degree of culpability, its financial condition, its history of noncompliance, and whether the deficiencies prompting the CMPs are isolated or widespread. *Id.* §§ 488.438 (f), 488.404. BP Care could have participated in Barbara Parke's challenge to the CMPs at the administrative level.[6] Then, it could have challenged the constitutional aspects of the fairness of successor liability upon judicial review in a federal appeals court. *See Ill. Council*, 529 U.S. at 23 (noting that the ALJ's lacking the power to consider a particular constitutional argument "is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency").

Second, requiring strict adherence to § 405(h) does not effectively preclude review in BP Care's situation because BP Care was a party with standing to contest the money penalties in the agency setting. BP Care argues that it was not the "provider" at the time CMS notified the facility of penalties against it and issued a notice of right to hearing; therefore, it did not have standing to participate in the hearing. Further, BP Care urges that HHS regulations did not provide it with the opportunity to intervene as of right in the proceedings at any point. These contentions appear incorrect.

It is true that in *Buchanan v. Apfel*, 249 F.3d 485 (6th Cir. 2001), this court found a nonparty to agency proceedings to be free of the § 405(h) bar, but that case is inapplicable here. In *Buchanan*, this court addressed an attorney's challenge to the constitutionality of the Social Security Administration's method of awarding legal fees to those who represent claimants. *Id.* at 487. The court found that the *Michigan Academy* exception applied to the challenge, in part because "[t]he

---

[5] Part B of the Act was amended in 1986; under the current law, claimants must pursue administrative challenges to agency's method of determining benefits. *Cathedral Rock*, 223 F.3d at 361 n.3 (citing *Farkas v. Blue Cross & Blue Shield of Mich.*, 24 F.3d 853, 860 (6th Cir. 1994)).

[6] A Departmental Appeals Board case, *CarePlex of Silver Spring v. Health Care Financing Administration*, Docket No. A-98-94, CR536, DAB No. 1683, 1999 WL 985363 (H.H.S.) (Apr. 13, 1999), held that a change of ownership in a facility may form a factor an ALJ considers in deciding whether to decrease the amount of the penalty. In that case, the nursing facility changed hands one week before CMS surveyed it; the new owner invested heavily in improvements, which resulted in a fully compliant facility within two months. The DAB found that presumptively, a history of non-compliance demonstrates a greater likelihood of future violations and thus supports a higher penalty. When a facility has changed hands, however, the new operator may disprove this presumption by making immediate efforts to comply. *CarePlex* suggests that, through participation in an agency hearing, BP Care could have made arguments based on the change in ownership to achieve a substantial reduction in the penalties. *See id.; Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 757 (6th Cir. 2004). Further, BP Care could have sought to demonstrate that the facility was compliant when surveyed, and that the CMPs were therefore erroneously assessed.

language of § 405(h) indicates that Congress never contemplated a situation where someone other than a party pursuing entitlement benefits would seek review" of a constitutional claim under the Social Security Act. *Id.* at 490. Because the plaintiff, as counsel to a claimant, was not a party with standing to protest the administrative decision, § 405(h) did not bar his claim.

*Buchanan* is inapposite here because BP Care was a party to the agency proceedings. HHS regulations require CMS to issue a notice of right to hearing to a *facility* assessed with CMPs, not to the business operating it. 42 C.F.R. § 488.434; *see also id.* § 483.5 (defining "facility"). The *facility* has the right either to request a hearing or to waive hearing rights to obtain a 35% reduction in the CMPs. *Id.* §§ 488.432(a), 488.436. At the hearing, the ALJ may consider the *facility's* financial condition, compliance history, and culpability—not that of the specific business upon which CMS served its initial notice of hearing. *Id.* § 488.438(e), (f). The hearing itself is open to "the parties and their representatives and technical advisors, and to any other persons whose presence the ALJ considers necessary or proper." *Id.* § 498.60(a). Parties to the hearings are defined as "the affected party" and CMS or the OIG." *Id.* § 498.42. The "affected party," unsurprisingly, is a provider affected by CMS's initial determination. *Id.* § 498.2. Thus, the regulations define parties to the administrative proceedings functionally, with respect to their stake in the outcome; they do not define them formally, with respect to whether the provider seeking to participate is the same one served with a notice of right to hearing.

Nonetheless, BP Care would arguably not be a party if it did not know that it was "affected"—i.e., if it had no notice of HHS's practice of imposing successor liability for CMPs. The district court did not commit clear error when it concluded, however, on the basis of the administrative record, that BP Care was served with motions filed by CMS in the CMP proceedings.[8] 337 F. Supp. 2d at 1027. These motions were served as early as January 9, 2000—sixteen months before the matter was terminated by Barbara Parke's withdrawal of its hearing request—and they disclosed that CMS viewed HHS policy as authorizing successor liability for CMPs. BP Care knew it was "affected," and it was a "provider" as soon as it assumed Barbara Parke's provider agreement in August 1999. Therefore, under the applicable law it was a party to the proceedings, unlike the plaintiff in *Buchanan*.

Finally, viewing the administrative scheme as BP Care's exclusive recourse does not preclude effective review because the procedural posture of the agency adjudication permitted BP Care to seek agency review at each stage, even after the ALJ dismissed the proceedings. BP Care argues that after Barbara Parke withdrew its request for a hearing, BP Care was left in a procedural limbo in which it could not appeal to the DAB because no "hearing before an ALJ" had occurred. Appellant's Reply Br. at 7; *see* 42 C.F.R. § 498.5. But BP Care did have administrative appeal

---

[7] Medicare regulations do not state whether more than one provider may be "the affected party" in the adjudication. The Secretary on appeal argues not only that HHS imposes successor liability on businesses assuming a previous operator's provider agreement, but also that the predecessor and the successor are jointly and severally liable for CMPs. The regulations do not provide explicitly for either successor liability or joint and several liability for predecessor and successor organizations under a Medicare provider agreement. Given the significant financial liabilities at stake and the risk of sham provider agreement transfers to avoid CMPs if the successor liability policy is not adequately enforced, the agency would be well-served by amending its regulations to address these issues.

[8] Whether BP Care had notice of the CMP proceedings forms the only factual issue in this case; therefore it is the only determination of the district court that we review for clear error. *See Cathedral Rock,* 223 F.3d at 358 (holding that the district court's findings of fact when ruling on a 12(b)(1) motion are reviewed for clear error).

rights, even after Barbara Parke abandoned its hearing request.[9] A party may request review before the DAB of either an ALJ's decision or an ALJ's dismissal of a hearing request. 42 C.F.R. § 498.82. Further, a party may request that the ALJ vacate an order of dismissal at any time within sixty days of notice of the dismissal, and the ALJ must grant the request if the party shows good cause. *Id.* § 498.72. Therefore, participating in the proceedings prior to Barbara Parke's withdrawal of its hearing request was not BP Care's only option. After the ALJ dismissed the matter,[10] BP Care could have, as an "affected party," either requested DAB review of the ALJ's dismissal or moved the ALJ to vacate the dismissal.

### III.   Mandamus Jurisdiction

BP Care also seeks a writ of mandamus under 28 U.S.C. § 1361 nullifying the ALJ's conclusion that the automatic stay in bankruptcy does not apply to the CMP proceedings, *see* 11 U.S.C. § 362(a), and ordering the ALJ not to impose liability for the CMPs on BP Care. In order to justify mandamus jurisdiction, a plaintiff must show it has exhausted all other avenues of relief, and that the defendant owes the plaintiff a "clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Both the Supreme Court and this circuit have avoided deciding whether § 405(h) bars mandamus jurisdiction under 28 U.S.C. § 1361, in the same way that it bars jurisdiction under §§ 1331 and 1346. *See id.; Mich. Ass'n of Homes & Servs. for the Aging, Inc. v. Shalala*, 127 F.3d 496, 503 (6th Cir. 1997).[11] The Supreme Court has, however, muted the importance of the question by holding in *Ringer* that a litigant who has a remedy available under

---

[9] It is possible that a business could assume a Medicare provider agreement before its predecessor has paid CMPs, but after its predecessor has exhausted all administrative remedies, as well as its right of appeal in a federal appeals court. We need not decide here whether a federal district court would have jurisdiction under 28 U.S.C. § 1331 to hear the successor's claim.

[10] The administrative record does not contain a notice of dismissal; however, the Secretary and BP Care agree that the ALJ dismissed the proceedings at Barbara Parke's motion. Appellee's Br. at 14; Appellant's Br. at 6. *See* 42 C.F.R. § 498.68(a) (providing that the ALJ may dismiss a hearing if an affected party withdraws its request).

[11] The literal wording of § 405(h) bars actions under 28 U.S.C. § 1331 or 1346. Before it was amended to its current form, § 405(h) barred actions under 28 U.S.C. § 41. *See Weinberger v. Salfi*, 422 U.S. 749, 756 n.3 (1975). Section 41 originally contained all of Title 28's grants of jurisdiction to United States district courts, save for several special-purpose grants of no relevance to the constitutionality of Social Security statutes. *Id.* In the 1948 recodification of title 28, a new chapter 85 was created to contain the jurisdictional grants to the district courts. Pursuant to the 1948 amendments, chapter 85 contained new sections 1331 through 1359 of title 28, which were formerly found in substance in the old § 41. In 1948, the mandamus statute was not included in chapter 85 because it had not been enacted yet. Chapter 85 of title 28 was amended in 1962 to include the mandamus statute.

In 1976, the Office of Law Revision Counsel "'revised' § 405(h) from its general bar of jurisdiction to its present form, which seems to preclude only those actions 'brought under section 1331 or 1346 of title 28,' and not those actions brought under the other jurisdictional sections. . . ." *Bodimetric Health Svces., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488 (7th Cir. 1990). In 1986, Congress adopted the codifier's language. *See id.* at 489 (citing Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 1162 (1986), § 2663(a)(4)(D)). At the same time, however, Congress specified that this "technical correction" was not to be "construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before [1986]." *Id.* (quoting Deficit Reduction Act § 2664(b)).

Since 28 U.S.C. § 1361 merely constituted an addition to the list of bases for district court jurisdiction which are found in title 28 and precluded *in toto* by § 405(h), and since the 1986 amendment to 42 U.S.C. § 405(h) was not intended to work a substantive change in the law, it is arguable, as a matter of statutory construction, that jurisdiction under 28 U.S.C. § 1361 is precluded by the third sentence of § 405(h). *Cf. Bodimetric Health Svces.*, 903 F.2d at 489 (applying this logic to conclude that § 405(h) bars diversity actions under 28 U.S.C. § 1332); *but see Ganem v. Heckler*, 746 F.2d 844, 851 (D.C. Cir. 1984) (finding that § 405(h) does not affect mandamus jurisdiction under § 1361 because if it did, the illogical result would follow that § 405(h) would bar mandamus in all lower federal courts except those in the District of Columbia, where lower courts' power to hear mandamus cases derives from an 1801 statute rather than from § 1361).

§ 405 has not met the exhaustion of remedies requirement for mandamus. 466 U.S. at 617; *see also Mich. Ass'n of Homes & Servs.*, 127 F.3d at 503. Thus, the *Ringer* decision has an effect similar to that of placing mandamus within § 405(h)'s jurisdictional bar. The conclusion that the district court lacked jurisdiction over BP Care's claims under § 1331, because of BP Care's failure to present its claims to the agency and to exhaust administrative remedies, therefore applies equally to bar mandamus jurisdiction.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM, on different grounds, the decision of the district court.